[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action for dissolution of marriage custody and child support, as well as property distribution was brought on January 20, 1995, and made returnable on February 21, 1995. The defendant, on February 23, 1995, filed this Motion to Dismiss, claiming that this court lacks subject matter jurisdiction over the issues of custody and visitation, in that the State of California is the CT Page 3040 "home state" for purposes of the Uniform Child Custody Jurisdiction Act, Conn. Gen. Stat. § 46b-90, et seq.
The defendant herein filed an action for a Legal Separation and for Custody in California. That action has a docket number 95-00303, Superior Court for Contra Costa County, California. Orders of custody, and to return the children to the State of California appear to have been entered by default by Judge Peter L. Spinetta. Consistent with the purposes and dictates of the UCCJA, this court contacted Judge Spinetta on Friday, March 24, 1995, at the conclusion of the evidentiary hearing on the Motion to Dismiss.
The facts adduced at the evidentiary hearing are as follows: the defendant drove the plaintiff and the children to the airport on July 30, 1994. The children were told that their parents were again separating, and that they were going to Connecticut for most of the year. Prior to their departure, the parties signed an agreement that the plaintiff would take the children to Connecticut for a period of time, but that California would remain the place where any issues of custody and marital distribution would take place. That agreement is an exhibit in this hearing.
The defendant later drove the family van across the country to Ocean City, New Jersey, where the plaintiff's family customarily vacationed. Katey joined him in Iowa to see his parents, and to complete the journey with him. He saw the children in September of 1994 at a home that the plaintiff had rented in Middlebury, Connecticut. The defendant claimed that he did not participate in the rental of that property, but testimony produced by the plaintiff seemed to indicate otherwise. Katey's birthday was that weekend, and the defendant stayed in the home with the family during his stay.
He expressed his dislike of his separation from the children, and wanted the children to return. He did not want the children to be surprised about changing the original pronouncement of the parents that the children would be in Connecticut for a year.
He visited again in November, 1994, on the weekend after Lindsay's birthday. That visit took place in Connecticut. Because the plaintiff would not talk about the move back until December 1st, she refused again to return voluntarily with the children to CT Page 3041 California. The Thanksgiving holiday was a vacation with Katey only, who accompanied her mother to California, who was doing some business there. He flew back to Connecticut to see the other children.
During their November 20, 1994 anniversary lunch, they talked about the family's return on January 1, 1995. She said she would return if he asked, which he did. On December 10, he came again to Connecticut to make plans for their return. They parties told the children at that time that February 1 was the planned date for return to California. She had asked for an extension until February 1. She was not happy about returning. They discussed that it would perhaps be better for Lindsay to remain with the plaintiff's sister or parents to complete the school year.
At the end of that visit, he was under the impression that she and the children would be back on February 1. He wrote a letter on January 2, 1995, discussing options to which she did not respond. He came to Connecticut again on January 20, and the plaintiff again refused to talk about their return.
In early January, he consulted an attorney in California, when he realized that she probably was not coming back, and he felt it was in the childrens' best interest to put in place the agreement they had made.
They were at the kitchen table, and the each served the other with competing divorce actions, each seeking custody of the children. He was served, after avoiding the sheriff, who read him the action through a closed door, by his wife after the sheriff left.
He saw the children on Presidents' weekend, and he visited them freely, off premises. The parties started talking about the agreement of the previous summer, but they never finished the discussion. After January 1, 1995, to the present day, the plaintiff has not offered to return to California after the school year.
On February 28, in California, the defendant met in court with a Mediator. On March 10, he again appeared at the Contra Costa County courthouse. There were further orders entered, without the need of testimony. CT Page 3042
At the end of the school year, Katey had completed second grade and had been treated by doctors for a kidney problem. She has been taken to doctors in Connecticut.
Lindsay had finished the fourth grade, and was designated as talented and gifted. She also has a medical problem, narcolepsy, for which she has been treated for approximately two years. She had been treated at Stanford Sleep Clinic.
Matt had completed kindergarten. He was not being treated in California for any medical issues.
The defendant never agreed to let his children permanently relocate to the State of Connecticut, and he presses his claim that California is the home state of these children.
On cross-examination, the defendant conceded that the parties visited the State of Connecticut yearly, and they stayed with the maternal grandparents, or sisters. There are three maternal sisters, and the children have five first cousins. The defendant has two brothers, Alan and Michael. His parents live in Iowa. He speaks to his oldest brother once every year or two, and his middle brother he speaks to every few months. His father and mother are in reasonably good health. He was evasive in his response to questions concerning how his parents acquired the phone number and address of their grandchildren in Connecticut, and it became apparent that the paternal grandparents had not had contact with the children while they were in Connecticut.
The plaintiff and the defendant spent some time on Cape Cod and Nantucket in the summer of 1993 while the children remained in Connecticut with the plaintiff's family. The plaintiff and the children thereafter went to New Jersey with her family for a vacation. The defendant returned to California. Katey was on antibiotics during her visit. At some point in 1994, she had received treatment outside of California.
Lindsay was seen in Connecticut in 1993 at first for her narcolepsy. She was tested for lupus, and cancer, by Dr. Jillani. He is a Pediatrician in Watertown, and he has seen the children during their many stays in the State of Connecticut. The witness also testified that there may have been evaluation or treatment at Yale, but was uncertain. After having the Stanford Sleep Center recommended, the defendant denied that he waited for CT Page 3043 certain medical coverage to commence before the treatment there was sought.
During the separation of the parties, the defendant lived in a hotel at various times. He claimed that the plaintiff had the telephone number for those places, and that she created impediments to visitation, even thought they were in counseling. At one meeting with the children, the children were told that their parents were going to work on the marriage. He said he meant it when he said that.
The plaintiff called Rita Hoyt, a Real Estate agent, to testify concerning the lease of property in Middlebury. She met the plaintiff when she was searching for a rent. She has never met the defendant. She indicated that because of the need for a credit check, that she faxed the lease to the defendant at his place of business, and that it was returned, signed, by the defendant.
The plaintiff was called to testify. The children attend the Middlebury and Watertown Congregational Churchs, and were baptized in the Watertown Congregational Church during their infancy. Family gatherings were held thereafter.
During the summer of 1993, the two daughters were quite ill. Lindsay was sleeping accutely during the day and was losing muscle tone in her face Katey had been in the hospital in California with her second kidney infection, and she had been seriously ill in June and July. They came to Connecticut on July 21, 1993.
During the trip to Cape Cod and Nantucket, the plaintiff hoped to be able to discuss the childrens' health issues. She asked about his work situation, in light of the amount of effort their medical care would require. She needed to assess how much of his time might be available to her and the children, and he replied "I don't know." Later they discussed their marital situation, while in New Jersey. It was quite stressful because Lindsay's situation had deteriorated. There had been two weeks when Lindsay's condition was explored by a variety of treaters, who suggested rather catestrophic [catastrophic] possible diagnoses. She called her husband, who was unable to respond to the plaintiffs need to involve him in dealing with her in the medical decision-making process concerning Lindsay. CT Page 3044
In New Jersey, the plaintiff was upset about the results of Lindsay's testing at Waterbury Hospital. She was positive for the lupus antigen, and the doctor wanted Lindsay to return to Waterbury Hospital for more tests.
The diagnosis of narcolepsy was ultimately confirmed in California, and the plaintiff was told how to deal with the disorder and she discussed these things with the defendant. There was a disagreement as to whether or not she should play basketball, which conflicted with the child's need to be in bed by 8 p.m.
From mid-January until the beginning of May the parties had separated, and in late March of 1994, the plaintiff learned from a credit card, at what hotel he was staying. When he moved back, she asked him to commit for a period of time so that the children, who had endured two separations, would not have to go through that again. The plaintiff mother testified that their seperations [separations] had been difficult for the children, because their father had not disclosed where he was living. Her concern was that one of the children would require emergency treatment, and she would be unable to reach the defendant.
With respect to their agreement concerning her temporary move to Connecticut, and the retention of jurisdiction in the courts of California, she testified that she did not go to an attorney, and that she only signed the addition to the agreement so that she and the children could leave California. She agreed that neither had advise of counsel before they entered into the agreement.
On July 8, he went to London to visit a friend, Rob, and returned to California on the 18th or 19th. She asked if she could go, and he declined. He wanted to go by himself. He came home and told her he wanted a divorce.
Lindsay is presently attending St. Margaret's McTiernan and is doing very well. The tuition is being paid by her maternal grandparents. The physicians and school counselors believe she is in a structure which allows her develop her intellectual skills and deal with the narcolepsy. She saw a pediatric psychiatrist this week, and the plaintiff claimed that she told her husband that she was seeking an appointment with that doctor. During testimony, the plaintiff indicated for the first time that the psychiatrist would be able to see them some time during the CT Page 3045 weekend following the hearing.
Dr. Weiss has again recommended surgery for Katey. She has double kidneys lobes and double ducts which have the problem of reflux, which require surgery, which is presently scheduled for May 31.
All the children have a pediatrician here and they have all been referred to a specialist for chronic throat problems.
When the children were told that their father wanted them to come home to California, they expressed that they did not want to be pulled out of school. When it was discussed that Lindsay stay here, Katey became upset.
The plaintiff was employed in California, part-time and is also employed on a part-time basis here in Connecticut.
On cross-examination, the plaintiff stated that she planned to go back, but that the children had had a tremendous amount of turmoil, and she thought if they did well, the parents should reassess when and if they should return to California. Her level of family support in this area, and the family's assistance to her with the extreme medical needs of the two daughters is an important component to her feeling of stability here in Connecticut. It was obvious to the court, that the level of dysfunction between the parents as adults, their inability to communicate effectively with respect to the medical issues, played a role in her articulated desire to remain close to her family of origin.
Connecticut is clearly not the "home state" for UCCJA purposes. Further, the parties entered into an agreement prior to the plaintiff's departure from California to litigate any issues in California. While the defendant father presses his claim that the plaintiff engaged in "reprehensible conduct", this court cannot find such conduct. The parties agreed to the move of the children on a temporary basis, and the period of time has not elapsed.
While there are significant contacts here in Connecticut, the court finds that in addition to home state preference, there are significant contacts in California as well, and the court in California is not willing to conceded jurisdiction the the State of Connecticut. In consultation with Judge Spinetta, the court CT Page 3046 believes that the issues concerning custody and visitation should be mediated and decided in California. This court recommends that the Mediator assess with the parties the need for the children to be moved prior to end of the school, and to determine whether Katey will have surgery, as planned, on May 31 in Connecticut. If she has been prepared by her mother and her treating physician here in Connecticut, the delay and expected anxiety concerning the surgery may not be in her best interests.
The Motion to Dismiss is granted.
DRANGINIS, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.]
CT Page 3054